### AT THE

## OCTOBER SESSION 1865, IN BOSTON.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. EBENEZER R. HOAR,  } Justices.
Hon. HORACE GRAY, Jr.,
Hon. JAMES D. COLT,

---

## NORFOLK COUNTY.

### Thomas Curley vs. Daniel L. Harris & others.

One who is employed by a dealer in lumber to deliver lumber upon an unfinished bridge to sub-contractors who have undertaken to build the wooden portion thereof may recover damages against the contractors who have undertaken to build the entire superstructure, for an injury sustained by him while so delivering lumber, through a defect in the iron-work of that portion of the bridge which has been completed.

If one who has received a personal injury through the negligence of another signs a paper acknowledging the receipt of a small sum of money in full for his damages, a subsequent action cannot be maintained to recover damages for the same injury, unless his signature to the receipt was procured through mistake or fraud; and if instructions to this effect are requested, and the jury are simply instructed that if they are satisfied that the parties "fairly settled the claim it is sufficient, and the amount received in the settlement is not material to its validity as a settlement," a verdict for the plaintiff will be set aside.

Tort. The original declaration was as follows:

"And the plaintiff says that on the first day of September

A. D. 1862, at Boston in the County of Suffolk, the defendants by their servants were constructing a bridge; and that said bridge was negligently and improperly constructed, and that the defendants did not use due care in the construction of the same; and that as the plaintiff was passing upon the same, having a lawful right to be upon the same, and being then in the exercise of due care, said bridge, by reason of the defendants' negligence aforesaid, fell, and the plaintiff was violently precipitated to the ground, and struck and covered by the materials of said bridge. And the plaintiff further says that, by reason of the defendants' negligence aforesaid, he sustained severe internal and external bruises," &c.

The plaintiff obtained leave to file an amended declaration, which was like the original except in alleging that the plaintiff was employed to deliver lumber upon said bridge, to be used in the construction of the same, and had a lawful right to go upon and use said bridge, and on the day and year aforesaid went upon the bridge for the purpose of delivering said lumber.

The answer denied the allegations of both declarations, and averred that the cause of action, if any, had been settled.

At the trial in the superior court, before *Rockwell,* J., it appeared that the defendants, who were civil engineers and bridge-builders, contracted with the Boston and Providence Railroad Company, for a specified sum, to build the superstructure of a bridge over their railroad where Berkeley Street crosses it in Boston, according to certain plans and specifications furnished by the defendants; that the superstructure was of iron, with the exception of the floor timbers and planking; that one Nowell contracted with the defendants, for a specified sum, to furnish and put the woodwork on to the bridge; that Nowell purchased the lumber of Pope & Shepard, by whom the plaintiff was employed as a teamster; that, on the day of the injury to the plaintiff, three sections of the bridge had been erected, and one of them planked; that by the direction of Nowell the plaintiff drove with a load of lumber on to the section which had been planked, whereupon the entire bridge fell, and the plaintiff with it, and he then received the injury complained of. The bridge

was a truss bridge, consisting of an upper and lower chord, connected by posts, braces and counter braces. Neither of the defendants had been to the bridge for a week before it fell.

Nowell testified that, at the time he made the contract for the woodwork, he understood one of the defendants to say that as one span was completed the lumber for the next was to be driven upon the bridge ; that each span was as strong by itself as the whole bridge ; and that after the bridge fell the defendants found no fault with his management in driving the team upon the bridge. This testimony was not contradicted.

The only defect alleged to exist in the bridge was in the upper chord, composed partly of cast iron and partly of wrought iron ; and there was evidence tending to show that this was too light. The defendants introduced evidence tending to show that it was sufficient in size, and larger than was in common use elsewhere in similar bridges, approved by competent engineers and bridge-builders.

After the fall of the bridge the defendants instructed Nowell to ascertain and settle for them the claims for damage ; and Nowell instructed Shepard to settle with the plaintiff. Shepard testified that in October 1862 he told the plaintiff that the defendants wished to know what his claim was, and to settle it , and that the plaintiff said all he wanted was pay for his lost time and his doctor's bill; and afterwards, on the 16th of January 1863, Shepard and the plaintiff had a settlement, and Shepard paid the plaintiff $34.65, in addition to other sums which had been paid to him for wages and lost time, and took the following receipt: " Dorchester, January 16, 1863. Received of Pope & Shepard thirty-four $\frac{65}{100}$ dollars, in full for services to January 1st, and in full for damages on railroad bridge in Boston. Thomas Curley." Shepard received money from the defendants, though not quite enough to pay for the plaintiff's lost time and the doctor's bill; and he paid the balance from his own money. The plaintiff denied all recollection of the interview with Shepard in October, and denied that he knew what the receipt contained or that. he could read or write more than his own name; and he testified that he supposed the money

paid to him came from Shepard, and not from the defendants, and that he did not understand that he was settling any claim for damages. The defendants, however, introduced evidence tending to show that the receipt was read over to the plaintiff before he signed it.

The defendants requested the court to instruct the jury as follows:

" 1. The declaration sets forth no legal cause of action.

" 2. If the defendants contracted with the railroad company to build the superstructure of the bridge according to certain plans, specifications and models, the company furnishing the substructure, and had put up two or three sections in accordance with such plans, specifications and models, and the defendants contracted with Nowell to furnish and put on the planking, by an entire contract, and Nowell contracted with Pope & Shepard to furnish the lumber for the planking, and the plaintiff, employed by Pope & Shepard, was engaged in driving a load of lumber upon the sections of the bridge which had been put up, and the bridge fell, the defendants are not liable, though the superstructure was defective in design, though they had furnished the design for the superstructure, and though they had, at the time of making the contract with Nowell, some time before the bridge was erected, expressed the opinion that the lumber for the planking might be driven on to the bridge as it progressed; and it makes no difference with their liability that they told Nowell, after the accident, that he had done right in driving on to the bridge.

" 3. The fact that the bridge fell is not of itself any evidence, under the circumstances of this case, of negligence on the part of the defendants.

" 4. If the defendants, being engineers and bridge-builders, of competent skill and experience to build a bridge for the place, adopted a design for the bridge approved by their best skill and judgment, and the design proved insufficient, they are not responsible to the plaintiff for a mere error of judgment.

" 5. In testing the materials or the bridge, the defendants were only required to use that degree of care which careful and

competent engineers and bridge-builders ordinarily use in such cases.

" 6. If the bridge, in the state in which it was, was sufficient, so far as the ordinary skill and care of competent men for the business could determine, to sustain the load driven upon it, the defendants are not liable, although the bridge might not have been sufficient for the purpose for which it was ultimately designed.

" 7. If the bridge was substantially such as are in common use for similar purposes, and generally approved by competent men, the defendants are not liable.

" 8. If Nowell did not use ordinary care in driving or directing the driving of the lumber upon the bridge, in the state in which it was at the time, the defendants are not liable.

" 9. If the defendants built a bridge according to the design and plans furnished, and according to the size and of the quality contracted for with the railroad company, and the bridge fell solely because the upper chord was not large enough, or was made of cast iron, the defendants are not liable under the circumstances of this case ; certainly not, if they had no reason to believe, and did not believe, or as experienced and competent engineers and practical bridge-builders, in the exercise of proper care and prudence, knew of no cause for apprehension of danger.

" 10. If the receipt was read over to the plaintiff by Shepard, and the plaintiff signed it, receiving the money, it is binding as a settlement, although the jury may think he did not get enough, and although he did not sufficiently take into view any possible or probable future injuries.

" 11. The receipt and settlement shown by him are binding if the money was paid and kept, in the absence of fraud. The jury have nothing to do with the adequacy of the money paid. The plaintiff has no right to more than one satisfaction, nor any for future sufferings, if he afterwards suffered more than he expected at the time of the settlement.

" 12. If he knew what the paper said he is bound by it, even if not understanding the legal effect, in the absence of fraud."

The judge declined to give these instructions, and instructed the jury, amongst other things, as follows :

" There is nothing in the facts exhibiting such relations between the parties as to interpose a legal bar to the maintenance of this action.

" To sustain his action the plaintiff must prove affirmatively that at the time of the injury he was in the exercise of due care on his part; that his own want of ordinary care did not contribute to the injury; and that the fall of the bridge was occasioned solely by the want of ordinary care on the part of the defendants. The plaintiff contends that the fall was caused by a defect in the construction of the bridge. The only evidence of defect which appears in the testimony is evidence tending to show that the top chord was deficient in size, and that it was composed partly of wrought iron and partly of cast iron. The plaintiff must therefore satisfy you, upon the whole evidence, that the fall of the bridge was caused by a defect in this top chord. If the defect was in the superstructure, and this defect was not the cause, the cause must have been a latent defect in the construction or material of the superstructure. For the consequences of such latent defect the defendants are not liable, unless it is shown that such latent defect was known to them, or that they, in any way, in the preparation of the iron, or in the construction of the structure, acted with a want of that ordinary skill and care which skilful and prudent builders of such structures should be reasonably expected to use.

" If, therefore, the plaintiff proves that he received an injury from the fall of the section, he being in the exercise of due care, and that the fall was caused by a defect in the top chord occasioned solely by a want of ordinary care on the part of the defendants, he has a right to recover; otherwise not.

" The mere fact that the bridge fell is not sufficient evidence, under the circumstances of this case, of negligence on the part of the defendants; but the plaintiff must further show that the defect which caused the fall was owing to their want of ordinary care.

" The question here is, whether or not the defect caused the

injury in this case by reason of its being insufficient to sustain the burden and strain then actually upon it; and not whether the bridge, when completed, would or would not have been sufficient for the purpose of general travel for which it was ultimately designed.

" The plaintiff contends that this superstructure was either wholly or in part an experiment; which is contradicted by the defendants; and evidence has been introduced on both sides upon that subject. This evidence will be properly considered by the jury in its effect upon the case, and upon the question whether the defect causing the fall was in the top chord, but requires the statement of no particular principle of law. If there was evidence tending to show that the fall was occasioned in part by some defect in the substructure, connected with no negligence of the defendants, there would be no recovery against these defendants in this action; the cause must be solely the fault of the defendants.

" The declaration sets forth a legal cause of action. The defendants set up in their answer, and now insist upon a distinct ground of defence, namely, a settlement and payment. It is a question of fact for the jury upon the evidence whether there have been such settlement and payment. If there were, the plaintiff cannot recover. If the jury are satisfied that the parties, either by themselves or their authorized agents, fairly settled the claim, it is sufficient, and the amount received in the settlement is not material to its validity as a settlement."

The jury returned a verdict for the plaintiff, with $539.58 damages; and the defendants alleged exceptions.

*A. A. Ranney,* for the defendants. As a general principle it must be conceded that in order to render the defendants liable they must have violated some obligation or omitted some duty which the law, under the circumstances of the case, imposed on them, as regards this plaintiff. But there was no privity whatever between the plaintiff and the defendants, nor was any invitation held out to him or the public to go upon the bridge. I was not then a highway or a private way. The defendants were bound to construct the bridge according to their contract,

and not otherwise · and they were doing so. Whether the structure would be safe and convenient for a public highway when completed was a question for the determination of the other parties who were having the bridge built; and the responsibility must rest on tnem, and not on the defendants, who had no discretion in the matter. What the defendants said to Nowell, when the contract with him was made, must be regarded simply as the expression of an opinion, not controlling his action or connecting them in any way with him or his servants.

But if the defendants are held to have invited the plaintiff to go upon the bridge with his team, or stand in any such relation to him as is contended for, still they are not liable for the injury in question; but it must be regarded as a casualty arising from the risks incident to his employment. In the absence of an express contract, a master is not held to warrant the safety of the structure upon which a servant is employed or directed to go, nor the fitness or competency of other servants whom he may employ; but he is only required to exercise reasonable care and prudence in relation thereto. He must take proper care not to expose the servant to unreasonable danger. In the case at bar, the defendants cannot be held guilty of negligence, unless they knew or had reasonable cause to believe that the upper chord was too light. But they are not shown to have known or to have had reasonable cause to believe this. According to the best of their judgment, information and belief, as the result of experience, concurred in by other approved engineers, it was sufficient. If they were in error in this respect, it was the innocent error of a well informed judgment. Under these circumstances, there was no negligence. See *Ormond* v. *Holland,* El., Bl. & El. 102; *Tarrant* v. *Webb,* 18 C. B. 797; *Priestley* v. *Fowler,* 3 M. & W. 6; *Couch* v. *Steel,* 3 El. & Bl. 402; *Williams* v. *Clough,* 3 Hurlst. & Norm. 258; *Southcote* v. *Stanley,* 1 Hurlst. & Norm. 249; *Mad River, &c. Railroad* v. *Barber,* 5 Ohio State R. 541; Addison on Torts, 93, 94.

Specific instructions were asked for, and were required by the circumstances of the case, as to the settlement. The receipt

could not be controlled by parol evidence. *Brown* v. *Cambridge* 3 Allen, 474. The jury were misled by the instructions on this point.

*G. O. Shattuck & R. M. Morse, Jr.*, for the plaintiff.

BIGELOW, C. J. The defendants were clearly liable to the plaintiff in this action, if they were guilty of negligence in the construction of the bridge by the fall of which the plaintiff was injured. This liability rests on two grounds.

The first is, that there was evidence to show that the defendants, in making the contract for the woodwork of the bridge, stipulated that the lumber might be carried in teams on the different sections of the bridge as they were completed, and before the whole structure was finished, and that each span was as strong by itself as the whole bridge, when done, would be. This stipulation was equivalent to an agreement by the defendants with the contractors for the lumber and his servants that they would use due care in the construction of the bridge, so that each span would support in safety a team loaded with lumber.

The other ground is the more general one, that in the absence of any express stipulation there was an implied obligation or duty resting on the defendants that they would use due care in the construction of the iron work of the bridge, so that subcontractors under them and their servants employed on other parts of the work should not be exposed to risk of injury while engaged in the due course of their employment or service, by reason of any neglect or want of reasonable care on the part of the defendants in building that portion of the structure which was to be made and erected by them. The privity, so far as any is necessary to support the action, is found in the relation which subsisted between the parties at the time of the injury to the plaintiff growing out of the contract under which the work was done, and in the execution of which the plaintiff was injured. The object of this action is not to charge the defendants by reason of the fault or neglect of a third person or subcontractor, but for the omission of a duty or obligation which rested on the defendants themselves. A person in entering into

a contract takes on himself the usual and ordinary risks of the business in which he is thereby employed, including the negligence and carelessness of other persons who may be engaged in the same service or employment. For injuries which arise from such causes an employer cannot be held responsible in damages. But the law does not relieve him from all responsibility to those with whom he contracts. He is bound to use due care in the selection of those whom he employs to work in company with others, and to be reasonably diligent and cautious in obtaining proper materials, in the erection of adequate structures and in the procurement of suitable tools, machinery and other instrumentalities upon or by means of which an employment is to be carried on. *Witte* v. *Hague*, 2 Dow. & Ry. 33. *Randleson* v. *Murray*, 8 Ad. & El. 109. *Collett* v. *London & North Western Railroad*, 16 Q. B. 984. *Snow* v. *Housatonic Railroad*, 8 Allen, 441, and cases cited.

These principles were substantially recognized and adopted by the court at the trial. If the instructions on this part of the case are open to any criticism, it is that they are wanting in fulness; or rather, they are too abstract, and do not sufficiently meet the several aspects of the case on the evidence, as presented by the specific prayers for rulings submitted in behalf of the defendants. We are not prepared to say, however, that the defect or omission in the instructions affords sufficient ground for a new trial; nor is it necessary for us to determine this question, inasmuch as we are clearly of opinion that upon another ground the case must be tried anew, when an opportunity will be given for a fuller exposition of the rights and obligations of the parties growing out of their relations towards each other than was given on the former trial.

We think a substantial error was committed in the failure to give adequate instructions on the issue raised by the averment in the answer, that the plaintiff had settled for and received compensation from the defendants for the injuries which form the subject matter of the present action. The receipt signed by the plaintiff, in connection with other evidence of a settlement adduced at the trial, was *prima facie* sufficient to establish this

ground of defence; and it was incumbent on the plaintiff to rebut it by proof of some mistake or fraud. On this issue the defendants were entitled to insist that explicit instructions should be given to the jury; and these were asked for by their counsel. The jury should have been told that the presumption was that the plaintiff knew the contents of the paper which he signed, and that an acknowledgment in writing by him that he had received payment in full for the damages resulting from the accident was a complete defence to the action, unless he could show that he was deceived or mistaken in making the settlement and signing the receipt. The only instruction given on this point was, that if the parties " fairly settled the claim" it would be sufficient to bar the action. This was altogether too vague and uncertain to guide the jury in passing on the issue presented for their decision. It did not define what would constitute in legal effect a fair settlement. It left it for the jury to suppose that if, on the whole, they were of the opinion that the compensation which the plaintiff agreed to receive in satisfaction was inadequate or insufficient to indemnify him, they were at liberty to disregard the settlement, set aside the receipt, and render a verdict in his favor for additional damages. Nor did the remark of the court that " the amount received by the plaintiff in the settlement was immaterial to its validity" cure the defect. It left the door still open for the jury to disregard and set aside the settlement, although it was made without any fraud or deceit on the part of the defendants, or any mistake or misconception by the plaintiff. For this reason the order must be *Exceptions sustained.*